**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Jared Renner, | Case No. 19-cv-3007 (SRN/DTS) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Minnesota Department of Corrections, | |
| Respondent. | |

Jared Renner, Pro Se Plaintiff

Scott Buhler, Polk County Attorney's Office, 816 Marin Avenue, Suite 254, Crookston, Minnesota 56717

## INTRODUCTION

Pro se petitioner Jared Renner, an inmate at the Minnesota Correctional Facility in Faribault, Minnesota, seeks a writ of habeas corpus, collaterally attacking his state convictions on grounds of insufficient evidence. Because sufficient evidence supports Renner's convictions for felony pattern of stalking and criminal sexual conduct and because the Minnesota courts' findings are correct and reasonable, this Court recommends Renner's petition be denied.

## FINDINGS OF FACT

In 2016, Minnesota charged Renner by complaint in Polk County for a multi-day series of brutal altercations between Renner and his wife, Danell Jennings. Renner was charged with:

Count I & II: Felony Domestic Assault by Strangulation, in violation of Minnesota Statute § 609.2247, subd. 2;

> Count III: Felony Threats of Violence, in violation of Minnesota Statute § 609.713, subd. 1;
>
> Count IV: Felony Criminal Sex Conduct-Third Degree-Force or Coercion, in violation of Minnesota Statute § 609.344, subd. 1(c);
>
> Count V: Felony Pattern of Stalking Conduct, in violation of Minnesota Statute § 609.749., subd. 5(a); and
>
> Count VI: Gross Misdemeanor Interfere with Emergency Call, in violation of Minnesota Statute § 609.78, subd. 2(1).

Resp't Mem. P. & A. Ex. 1 at 1–3; 251–52, Jan. 15, 2020, Dkt. 8-1. After a bench trial in 2017 before District Judge Kurt Marben, the court convicted Renner on Counts I through V. *Id.* at 258.

I.  **Criminal Conduct**[1]

On Thursday, September 15, 2016, Jennings arrived home from work to their shared home, where Renner was present. They both drank a few beers, then began arguing around 10:00 pm. *Id.* at 252. After taking Jennings' car keys and cell phone, Renner threw Jennings onto the top of her car and began "choking her by placing his hands around her neck." *Id.* Jennings tried to escape and fought back by hitting Renner, but Renner tackled Jennings and choked her three times that evening. *Id.*

The next day, Friday, September 16, 2016, Jennings awoke with bruises on her arms and back and a visible injury to her right eye from Renner assaulting her. *Id.* Jennings went to work that morning and the two exchanged texts throughout the day. *Id.* 252–53. That night after Jennings returned home from work, they had a bonfire and again both Jennings and Renner drank alcohol. *Id.* at 253. Renner again became angry and

---

[1] The Court draws this information from the Polk County District Court's findings of fact at trial, all of which are supported by evidence presented throughout Renner's trial.

violent, took Jennings's phone and car keys, and then assaulted her. *Id.* He threw her around, bit her neck, and choked her with his hands, squeezing until she struggled to breathe. *Id.* They ended up in the bedroom of their home, where Renner threatened to sodomize Jennings if she did not have sex with him. *Id.* Jennings did not want to have sex with Renner; she was crying and told him to stop. *Id.* But Renner threatened to kill Jennings if she did not "[s]hut up and take it." *Id.*

Jennings was scheduled to work on Saturday, September 17, 2016, but Renner would not let her. *Id.* He still had her phone and car keys. *Id.* Renner—pretending to be Jennings—texted Jennings's co-workers from Jennings's phone explaining her absence was because Jennings was "just sick of that place." *Id.* That Sunday, September 18, 2016, Renner and Jennings went to a casino, and later a VFW club. *Id.* at 254. At the VFW Jennings sensed that Renner was becoming upset with her. *Id.* Scared, Jennings and a friend went into a bathroom, where Jennings showed her friend the injuries Renner caused over the past few days. *Id.* Renner in fact was angry and wanted to leave, and he threatened to slash Jennings's tires if she did not leave with him. *Id.* Jennings ran behind the bar to escape Renner, which led to a disturbance in the VFW. *Id.* Renner fled the VFW in Jennings's car, and the VFW manager called the police. *Id.* The Polk County Sheriff responded to the VFW and began investigating the altercation, leading to Renner's arrest and indictment. *Id.* at 254–55.

## II.  Renner's Trial & Sentencing

During a two-day bench trial in November 2017, the court heard testimony from Jennings and other witnesses about Renner's conduct. *Id.* at 251. Renner neither testified nor presented evidence in his defense. After considering the testimony of the witnesses,

3

their credibility, and the evidence the state presented against Renner, the court found Renner guilty on Counts I through V but acquitted on Count VI. *Id.*

After conviction but before sentencing, Renner agreed to plead guilty to a pending unrelated burglary charge in exchange for a "presumptive sentence of 23 months for felony pattern-of-stalking conduct and 90 months concurrent for third-degree [criminal sexual conduct], . . . and be sentenced to 90 months concurrent" on the burglary charge. *Id.* at 361 (*State v. Renner*, No. A18-1019, 2019 WL 1757931, at *1 (Minn. Ct. App. Apr. 22, 2019)). Renner apparently preserved his right to challenge his conviction on the stalking and related charges despite his agreement regarding sentencing. The district court sentenced Renner consistent with the terms of his plea agreement in March 2018. *Id.* at 260–63, 360.

### III.   State Appellate History

Renner appealed his conviction of threats of violence and criminal sexual conduct to the Minnesota Court of Appeals, arguing that the district court lacked sufficient evidence to sustain his conviction.[2] *Id.* at 279, 360. He claimed there were inconsistencies in Jennings's account of the incident between her report to law enforcement and her testimony at trial. *Id.* at 279. His argument hinged on the fact that Jennings had, before trial, tried to recant her allegations and informed the state and the court that she did not want to testify. *Id.* at 280–81. The inconsistencies Renner identified are that at separate times, Jennings had varied on the location and level of consent of their sexual encounters during the Thursday and Friday events. *Id.* at 282–83. Renner also cites inconsistencies

---

[2] Renner also challenged how the court computed and issued his sentence, though this aspect of his appeal is not raised as part of this Habeas petition.

between Jennings's account of events between her testimony on direct and her testimony on cross-examination. *Id.* Finally, Renner also alleged that the state's use of leading questions to elicit Jennings's testimony at trial was improper. *Id.*

On direct appeal, the Minnesota Court of Appeals reviewed the evidence and the trial court's findings. Analyzing the elements of each crime and the corresponding evidentiary support, it rejected Renner's arguments and found that, viewing the evidence in the light most favorable to the verdict, a factfinder could reasonably conclude that the state had proven guilt beyond a reasonable doubt and affirmed Renner's conviction. *Id.* at 361-63. Renner sought discretionary review in the Minnesota Supreme Court, which was denied. *Id.* at 366–77, 405.

Having exhausted his avenues for relief in state court, Renner now seeks a writ of habeas corpus. For the reasons discussed below, this Court finds that Renner is not entitled to such relief.

## CONCLUSIONS OF LAW

Renner contends that his sentence is unlawful because the evidence introduced at trial could not prove his guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970) (holding that the Constitution "[protects] the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). He asks this Court to vacate his conviction. Pet'r's Mem. P. & A. 10, Feb. 14, 2020, Dkt. No. 10. Because the evidence was sufficient to support Renner's conviction this Court recommends Renner's petition be denied.

I.   **Jurisdiction**

An individual imprisoned under a state court judgment who believes their custody violates the Constitution or federal law may petition a federal court for a writ of habeas corpus. 28 U.S.C. § 2241(c). Renner properly exhausted his state remedies, a jurisdictional prerequisite to seeking federal habeas relief. 28 U.S.C. § 2254(b)(1)(A); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *see* Resp't Mem. P. & A. 4, Jan. 15, 2020, Dkt. No. 8. As Renner is in custody in Minnesota, jurisdiction and venue in this Court are proper.

II.  **Standard of Review**

A federal court's review of a state prisoner's habeas corpus petition is limited by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA).[3] AEDPA restricts a federal court's ability to grant habeas corpus relief unless the state courts' actions:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Nash v. Russell*, 807 F.3d 892, 896–97 (8th Cir. 2015).

A decision is contrary to federal law if the state court reaches an opposite conclusion to the Supreme Court on a question of law or if its application of a rule is incompatible with Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). The state court decision may constitute an unreasonable application of federal

---

[3] Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, April 24, 1996.

6

law "if the state court identifies the correct legal rule from [the Supreme Court's] cases, but unreasonably applies it to the facts . . . ." *Id.* at 407. Thus, the federal court should assess whether the state court's application of federal law was "objectively unreasonable," not merely erroneous or incorrect. *Id.* at 409, 411.

If the petition alleges the state court's decision was "based on an unreasonable determination of the facts," the federal court affords substantial deference to the state court's factual conclusions. Federal courts presume state court factual determinations are correct unless the petitioner rebuts the presumption by showing clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Lupien v. Clarke*, 403 F.3d 615, 618 (8th Cir. 2005).

## III.   Sufficiency of the Evidence

### A.   Introduction

Renner argues that his conviction was not supported by sufficient evidence for two reasons. First, that Jennings's "statements were inconsistent" or her "allegations were coerced or recanted." Pet'r's Pet. Attach. 1 at 1, Nov. 15, 2019, Dkt. No. 1-1. He stresses that Jennings "clearly recanted her statements on numerous occasions and was also found to have [asked] the state [to] drop the charges by providing a written letter asking for all charges to be dismissed." *Id.* And second, that the state's method of evoking Jennings's testimony was improper because it "use[d] . . . questions that were leading on the redirect examination." *Id.*

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979). Though a challenge based on sufficiency of evidence is not a precise constitutional claim,

7

"[a]ny challenge to the sufficiency of the evidence to convict in a state prosecution is necessarily a due process challenge to the conviction." *Satter v. Leapley*, 977 F.2d 1259, 1262 (8th Cir. 1992). But when a petitioner raises a state sufficiency of evidence challenge in a federal habeas petition, the federal court does not re-weigh the evidence, but instead "may grant relief only if . . . the [Minnesota appellate courts'] conclusion that the evidence satisfied the *Jackson* sufficiency of evidence standard [is] both incorrect *and* unreasonable." *Garrison v. Burt*, 637 F.3d 849, 855 (8th Cir. 2011) (internal quotation marks omitted) (emphasis in original). "[A] state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)) (internal quotation marks omitted). Federal habeas review of the sufficiency of evidence in a state court decision is thus "twice-deferential." *Id.* First, the federal court gives deference to the trial court verdict and factual findings. And second, the AEDPA requires a federal court to respect the state appellate court's assessment of a sufficiency of evidence challenge. *Maxwell v. Gau*, 12-cv-1770 (ADM/TNL), 2014 WL 1371912, at *18 (D. Minn. Apr. 8, 2014).

This Court has had the opportunity only to read the transcript of the trial court testimony, but not to see the witnesses, hear their voices, and evaluate the other myriad factors that influence the credibility of testimony far beyond the words uttered. The trial court had this ability, and so both the Minnesota appellate courts and this Court rightfully accord substantial deference to the trial court's evaluation of the evidence and determination of the facts.

**B.    The Evidence Presented**

**1.    Criminal sexual conduct**

To convict Renner of Criminal Sexual Conduct in the Third Degree by force or coercion, the state was required to prove beyond a reasonable doubt that:

(a) Renner intentionally sexually penetrated Danell Jennings;

(b) The sexual penetration occurred without the consent of Danell Jennings;

(c) Renner used force or coercion to accomplish the penetration; and

(d) Renner's act took place on or about September 16, 2016, in Polk County, Minnesota.

Resp't Mem. P. & A. Ex. 1 at 256–57, Dkt. 8-1. After Renner's trial, the trial court found the state had proven each element beyond a reasonable doubt based on the evidence the state presented. *Id.* at 257. Jennings testified that on September 16, 2016, Renner forced himself on Jennings, had non-consensual sex with her, and threatened that if she did not comply, he would "penetrate [her] anally." *Id.* at 52–54. Jennings was afraid, she was crying, and she begged Renner "[p]lease don't." *Id.* at 54, 257. But Renner ignored Jennings's pleas and held her down while he forcefully had sex with her. *Id.* at 54–55. Jennings testimony, if credible, is patently sufficient to support the conviction. The trial court found her testimony credible.

Renner fails to identify which element of the crime lacked sufficient evidence; but since enough evidence exists to satisfy all elements, Renner's ambiguity is inconsequential. The trial court's factual findings and the Court of Appeals' review is consistent with Minnesota precedent, which holds that both Renner's physical restraint and threats of anal intercourse and death satisfy the force and coercion necessary for a third-degree criminal sexual conduct conviction. In *State v. Kasper*, the defendant was

9

convicted after having non-consensual sex with a woman in his car. *State v. Kasper*, 405 N.W.2d 540 (Minn. Ct. App. 1987). There, he grabbed an 18-inch wooden "2x4" and threw it in the back seat, possibly only to make room for them to have sex. *Id.* at 541. But his victim feared the defendant may use it to assault her and she was unable to push him away. *Id.* That victim's fear and her inability to push the defendant away as he removed her pants and had sex with her was enough to constitute third degree criminal sexual conduct. *Id.* at 541–42. The court emphasized that creating an environment of fear is alone enough to meet the force or coercion element. *Id.* at 542 (citing *State v. Carter*, 289 N.W.2d 454, 455 (Minn. 1979) (holding defendant, although using neither force nor verbalized threats of force, intentionally created an atmosphere of fear which caused complainant to submit to sexual advances)).

In *State v. Jones*, the court held that "a criminal sexual conduct conviction can rest upon the testimony of a single credible witness." *State v. Jones*, 647 N.W.2d 540, 548 (Minn. Ct. App. 2002) (internal citation omitted), *review granted*, *affirmed in part*, *reversed in part on other grounds*, 659 N.W.2d 748 (Minn. 2003), *habeas corpus denied*, *Jones v. Carlson*, No. 06-cv-2317 (JRT/SRN), 2008 WL 4748541 (D. Minn. 2008), *certificate of appealability denied*, No. 06-cv-2317 (JRT/SRN), 2009 WL 294352 (D. Minn. 2009).

## 2.   Pattern of stalking conduct

To convict Renner of Felony Pattern of Stalking Conduct, the state had to prove beyond a reasonable doubt that:

(a) Renner engaged in a pattern of stalking conduct. A pattern of stalking conduct requires proof of two or more criminal acts (which may include terroristic threats, domestic assault, and criminal sexual conduct in the third degree) within a five-year period;

(b) Renner engaged in this conduct with respect to Danell Jennings;

    (c) Renner knew or had reason to know that Danell Jennings would feel terrorized or fear bodily harm. "To terrorize" means to cause extreme fear by use of violence or threats; and

    (d) Renner's act took place on or about September 15 to September 16, 2016 in Polk County, Minnesota.

Resp't Mem. P. & A. Ex. 1 at 257, Dkt. 8-1.

The trial court found that from September 15 to 16, Renner twice committed domestic assault by strangulation, and committed criminal sexual contact on September 16. *Id.* at 257–58. Jennings testified that during each of these events, she feared—and indeed experienced—significant bodily harm. *Id.* at 27, 33–35, 51–57. Renner even threatened to kill Jennings if she didn't "shut up and take it" and "do what he said." *Id.* at 56. Renner caused Jennings fear by using both violence and threats—he terrorized her.

Renner again fails to identify a specific element on which the state presented insufficient evidence to support his conviction. Even so, the Minnesota Court of Appeals appropriately found the trial court had sufficient evidence to find Renner guilty, and its review of Renner's sufficiency of evidence claim is both correct and reasonable. *Id.* at 363. Indeed, the trial court had more than enough evidence based on Minnesota precedent. In *State v. Franks*, the Minnesota Supreme Court upheld a conviction for felony pattern of stalking for conduct analogous to Renner's. *State v. Franks*, 765 N.W.2d 68 (Minn. 2009). There, the defendant broke into his ex-wife's house, threatened to kill her, and physically assaulted her by dragging her around the house. *Id.* at 70. The next day, the defendant again broke into his ex-wife's house, where he sexually assaulted her. *Id.* The Minnesota Supreme Court found that evidence of the defendant's actions was enough to support the defendant's conviction. *Id.* at 77.

As in *Franks*, Renner's repeated violent actions against a single victim occurred over multiple days and caused her to feel terrorized and put her in fear of bodily harm. The evidence presented at trial, if credible, was sufficient to support Renner's conviction.

### C. The Credibility Determination

Renner does not claim that Jennings's testimony fails to establish the requisite facts necessary to sustain a conviction, but instead that her pretrial recantation and efforts to persuade the state to drop the charges against Renner fatally derogates the credibility of her testimony. The essence of Renner's challenge is that some of Jennings's out-of-court statements conflict with her in-court testimony. This inconsistency along with the impeachment of Jennings on cross-examination, Renner argues, means that the evidence presented to the court during his trial is legally insufficient to support his conviction. But the trial court found Jennings' testimony credible enough to convict Renner. The district court's factual findings are "presumed to be correct," and it is Renner's burden to rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The Minnesota Court of Appeals reviewed the evidence and reasonably concluded that the district court's factual findings were supported by the evidence presented during Renner's trial. It noted that despite Renner's claims that Jennings's testimony was not credible because of her prior inconsistent statements, it is the factfinder—here the trial court—that "is in the best position to weigh credibility and thus determine[] which witnesses to believe and how much weight to give their testimony." *Id.* at 362.

Renner essentially asks this Court to assess the credibility of witnesses it neither heard nor observed. This assessment is twice-removed from the actual trial—it would

require this Court to review the reasonableness of the appellate court's deference to the trial court's credibility determination, as well as to conduct its own direct review of the trial court's credibility determination, all without the benefit of seeing or hearing the witnesses whose credibility Renner assails. It would be a truly extraordinary circumstance that would permit this Court to substitute its judgment on such issues for that of the state trial and appellate courts.

Renner has presented no basis for doing so here. The mere existence of inconsistencies in witness testimony, the phenomenon of impeachment of a witness on cross-examination, or a recantation[4] prior to trial by a victim of domestic violence provide no basis—either singly or taken together—to have this Court substitute its judgment for the trial court's. The trial courts of this state are well equipped to consider and resolve such issues and do so on a regular basis. This Court will not substitute its judgment of witness creditability for that of the Polk County District Court or the Minnesota Court of Appeals.

Renner also maintains that the state used leading questions to elicit testimony from Jennings on redirect examination. While the use of leading questions on direct is generally disfavored, there is no unconditional prohibition. Fed. R. Evid. 611(c). Further, Renner objected to only one leading question, which was posed during the direct examination of Karen Bachmeier, not during Jennings's redirect.[5] Resp't Mem. P. & A. Ex. 1 at 215. Thus, Renner failed to preserve this issue at the trial court and on direct

---

[4] The occurrence of a coerced or false recantation by a terrorized victim of domestic violence is all too familiar to trial courts, which is precisely why the trial court is in the best position to evaluate the alleged recantation.
[5] This conclusion is drawn from the transcripts provided to the Court as part of Respondent's memorandum of law.

13

appeal. Even if he had raised the issue, however, the mere use of the leading questions on direct examination is not a sufficient basis for this Court to question the trial court's assessment of credibility.

## CONCLUSION

The record before this Court shows that the trial court had sufficient evidence to establish each element of the crimes for which Renner was convicted. The Minnesota Court of Appeals' review is both correct and reasonable. Renner has presented no clear and convincing evidence to the contrary, and so has failed to meet his burden to collaterally attack his conviction on habeas review.

## RECOMMENDATION

For these reasons, this Court recommends that:

1. Petitioner Jared Renner's petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED**; and

2. This action be **DISMISSED WITH PREJUDICE**.


Dated: September 10, 2020            \_s/David T. Schultz_____
                                     DAVID T. SCHULTZ
                                     United States Magistrate Judge